Okay, it looks like we have both counsel present. Is that correct? Yes, Your Honor. Yes, Your Honor. Okay, you're here in front of the First Division, excuse me, the Second Division of the First Court of Appeals, the First District. In the case of In re the commitment of Andre Adams. The people of the state of Illinois, versus Andre Adams, which is 2021. It'll have first 1-8-2-0-4-9 or 18-2-0-4-9. The way we have the Second Division of the First District Court here today, and the way our division is handling these zoom oral arguments is to give each advocate 10 minutes to summarize his or her argument, and that will be uninterrupted to the best of our questions if we feel it's appropriate, and the appellant should reserve some, you know, three to five minutes for rebuttal so 10 minutes direct argument and then questions and then we'll take it from there. So let's start with the appellant.  Thank you, Your Honor. May it please the court. My name is Joseph Howard and I am the attorney for the appellant in this case, Andre Adams. Your Honor is the court here should remand this case in order for the circuit court to hold a fry hearing in order to determine whether the mental diagnoses that were utilized in the underlying trial were generally accepted as valid diagnoses in the psychological or and psychiatric communities. In this case, counsel for the respondent trial filed a motion in limited to preclude the state from presenting the diagnoses that came out during the pre trial discovery and those diagnoses were as follows, a paraphilic disorder non consenting males, and dealt with narcissistic personality disorder. The, the state went on to the court ended up denying the motion, and the state went on to utilize those diagnoses at trial. However, the important part of this your honors, is that at trial the doctor's testimony did not focus simply on non consenting males but rather the bulk of all that they talked about was the respondents sexual attraction to adolescence, which is quite different than simply a non consenting victim. And this fits squarely into the case of john knew which I'm sure that you're all aware of. And the. So essentially, the experts utilize a disorder that was, you know, general, there's certainly evidence to support that it was accepted in the, in the, in the community, although that still remains in dispute. But that diagnosis excluded the words adolescence and and excluded the important part of what that diagnosis was. And for those for these reasons we believe that he's entitled to a, a hearing a fry hearing to determine whether or not that diagnosis is valid and if you look at the diagnosis which in the new case is called pedophilia. It's basically paraphilic disorder, but with an attraction to adolescent males. In new they looked at that diagnosis, and they, they, they said that, that it was not the Supreme Court said it was not established in the community and send it back for a fry hearing the, the DSM D five which was utilized in this case, did, did not, did not. It does not directly address hemophilia, it, it gives a DSM D five. There was a lot of debate when DSM before and DSM DSM D five was replacing DSM before over whether or not it he before you should be included, and they ultimately elected to leave it out. And that's one of the other reasons that the fry court remanded it. In this case, your honors. There was obviously no fry here. Moreover, there was no evidence presented at trial to show whether the diagnosis as utilized a trial should be accepted as valid. The state did not formally asked the courts to take judicial notice of that diagnosis, and did not present any, you know, evidence regarding what missed what standards Mr. Adams would have to fall into to meet the criteria. The. There's some cases that have come out that are certainly relevant to the discussion here I just want to briefly go over that probably the most important of those is going to be the Bauer decision which is a second district case. In that case, there was a, a, a hemophilia diagnosis, which is essentially what we're looking at in this case. And the parties actually agreed to have a Friday. And in that to sit in that fry hearing the court found that a substantial subset of psychologists and psychiatrists that evaluate treat or research sex offenders accepted hemophilia, the diagnosis, and so the court allowed it on appeal. The reviewing court expanded the trial courts holding to basically say that hemophilia is generally accepted in the wider psychological and psychiatric communities. Of course the trial court did not make that finding, but the appellate court expanded it. There was no evidence at that fry hearing that demonstrated it was generally accepted. And in fact in this case the state's very own experts state that hemophilia is not an accepted diagnosis in the psychiatric community, and that alone shows you the problem here that there is an important. There's a dispute in the scientific community. The Bauer decision also disregarded really the DSM V5 which is the primary diagnostic tool for mental illnesses in the United States, and instead used the International Classification of Diseases 10th edition, which is not a diagnostic manual but rather its purpose is different. Its purpose is to collect data to provide a format for comparing and dealing with international health issues. So, the Bauer case. In some ways it's good for us because certainly it establishes that there was a need for a fry here. But if you look at the rest of it, it's pretty clear that the decision is not obviously it's not binding on this court because it's a second district district case, and there are problems as I said for, you know, regarding regarding the issue. I'd just like to reserve the rest of my time for rebuttal that. Okay. Questions. Just one. So, it's your position that Mr Adams is have a feeling have have a feeling that your position. Yes, I believe that's what that's what is. That's what the state brought out basically in their, in their testimony, they didn't use the word pedophilia, but it certainly appears he would fit that diagnosis. But there were two, two witnesses who expressly stated, we are not diagnosing him with have a feeling. How do we overcome that testimony that the jury apparently accepted. Well, I guess that's the problem your honors. The, the, the issue is that they didn't use the word pedophilia, for a good reason, and that's because it's pretty clear that there's a big dispute about that but the substance of what the doctors were talking about that we're not talking about the defendant, grabbing someone off the street, and non consent. Their focus was his attraction to adolescent males, that is he the failure. So, that's the problem. Well, the problem that you have counsel is that you refuse to accept what the record in this case showed, and I'll just talk about one of those two experts because Dr Schechter specifically diagnosed your client with Opie OSPD non consent and narcissistic personality disorder. Where are you going here, you can't shoehorn that into the new case. Well, that was one of the diagnosis is of course but it was also. But that's all they need is that I mean, you know, that in and of itself is a enough of an expert basis for the jury to determine that this man ought to be declared an SVP which is what they did. Yeah, I mean, that's true, but that I think he's entitled to a fry here. I think that regardless of the doctors, a fry hearing for what this has already been determined in other cases that OPSD or whatever acronym that got changed at one point in time is something that is accepted and doesn't require a fry hearing as a for non consent. Yes, but not for he'd be feeling, which is what we're dealing. There's no testimony, there's no testimony, not even not even Mr. Adams expert said that Mr. Adam suffering from Hebrew feeling, not even Dr. Delaney testified to that. In fact, her testimony was to the effect that he was aroused by the thought of power and control over his victims. Isn't that a part of the diagnosis, how are we supposed to just ignore that. Well, it's not a question of ignoring it it's a question of getting the giving Mr. Adams, the ability to challenge this diagnosis, that's what it's about. And it's not a diagnosis. Well, it wasn't technically that he no one said is correct there's no nothing in the record that says he'd be feeling. And, but the house this case like the new case that, I mean, you're making it up. It's no your honor crab understood. It's, it is the substance of all the doctors testified the state doctors testified the substance of his disorder. Was the attraction to adolescent boys which is hemophilia. Yeah, you try that with the jury and it didn't work. I don't think it's working here either. Any other questions for my colleagues. Let's hear from the state. Good morning, Your Honors Council. Thank you and may please the court. Assistance Attorney General Aaron Williams, on behalf of the people of the state of Illinois. Court seems to have anticipated the substance of our argument for the most part. I won't beat a dead horse here. No, the this argument, what respondent is doing here. This is, quite frankly, just an attack on our experts credibility. The trial court rejected this, the jury rejected this emotion in the, in the hearing on the motion eliminate respondents trial counsel told the trial court that his diagnosis is really hemophilia, and the state's doctors are now trying to disguise it as paraphernalia NOS non consent. He cross examined them and trial on this extensively about what hemophilia is and what the criteria for it are. And they said under oath. No, we did not diagnose him with hemophilia, we diagnosed him with OS PD non consenting males, a separate diagnosis, Dr Schechter explained, which is not about simply his attraction to post pubescent males but his arousal to be non consensual aspect of the sexual activity. It's a separate diagnosis. The Illinois Supreme Court said it was a second, a separate diagnosis in new, and on that basis distinguished this court's decisions in Melcher and Hayes one upholding what was then paraphernalia NOS non consent. And despite them saying under oath that their diagnosis was not hemophilia respondents still in his closing argument, tried to attack their credibility by arguing that it was said that all of the experts said that there is an attraction to adolescence and the attraction adolescence is hemophilia. Clearly that was rejected. But what do the state's doctors do what they've done is put it in the classification of paraphernalia otherwise specified. So we've tried he's tried this, it was rejected. Yeah. Our experts testified that they diagnosed him with OS PD non consenting males. It clearly explained the reasons for that diagnosis. He lured a 14 year old boy to his house under a pretext, gave him six shots of gin, waited for him to pass out, and then raped him, and he continued doing it for several minutes. Despite the victims multiple pleas for him to stop grabbed an adult inmates penis without consent in prison, and he's admitted in treatment now repeatedly that he has fantasies about total sexual power and control over his victims, or making them do what he wants them to do. As Dr. Travis put it. No. This is an attack on our experts credibility. This court does not revisit determinations about matters of credibility unless they're against the manifest weight of the evidence. It is not against the manifest weight of the evidence that our experts really meant what they said, and they diagnosed him with a condition for which there is ample evidence that he has. Also, all of those details I just mentioned the rape, the fantasies about sexually dominating people, the incident with the adult, there is no logical way that any of those would ever support a hemophilia diagnosis. And to the extent responded talks about how much they, you know, they talked about adolescence, well, all of his offenses in the community were against adolescence, I don't know how they would have avoided that. For the purposes of new and fry. The relevant question is not whether responded is a hemophiliac, although no one testified that he is. The relevant question is, what is the scientific methodology on which the people's experts diagnosis was based. That's really the question here, what is the diagnosis. They testified that it wasn't hemophilia, a fried hearing to determine whether he the feeling is generally accepted is just unnecessary. Now, if the court did overlook the people's experts testimony and found that the diagnosis was hemophilia, of course, I think there is evidence now that it is generally accepted and I'd love to talk about the second district's decision in Bauer I disagree with councils characterization of that decision, but frankly I don't think it's necessary for the court to reach that question. It's just irrelevant. And finally, I'll just say that there is sufficient evidence that responded as an SVP, he's never really contested that on appeal, except to argue that the narcissistic personality disorder would not by itself be sufficient to prove that he is an SVP which people would never argue that that was. So, if there are no further questions, we would ask that the court, affirm the trial courts decision, denying his request for a fried hearing to determine the general acceptance of a diagnosis he did not receive it and affirm the jury's verdict that he has SVP. All right, no questions for me anybody else. Okay. Briefly rebuttal. Your Honor, the your honors, the. This is an issue that the court. I understand there's obviously a situation where this is a. There was not the words, hemophilia, that, in this case, I understood that. However, again, the substance of what was set forth at the trial was hemophilia. And for those reasons, we believe this case should be remanded for a fry hearing, and I have nothing further. Okay, thank you very much for the briefs and argument. This is a, you know, unsettling area of the law obviously on many fronts, and everybody's doing their best to represent their clients and we appreciate it, we will get together and come back with an opinion in due time. Thank you very much.